THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
**Case No.: 9:22-mc-80620**

PRESTON HOLLOW CAPITAL LLC,

      Plaintiff,

v.

FMSBONDS, INC.,

      Defendant.

_____/

## MOTION TO COMPEL NON-PARTY FMSBONDS, INC.'S PRODUCTION OF DOCUMENTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Preston Hollow Capital LLC ("Plaintiff" or "Preston Hollow") submits this Motion to Compel Non-Party FMSBonds, Inc.'s ("FMS") Production of Documents and Incorporated Memorandum of Law.

## PRELIMINARY STATEMENT

This discovery dispute relates to an action in the Southern District of New York (the "SDNY Case")[1] against (i) Nuveen Asset Management LLC ("Nuveen") for violations of antitrust laws related to a group boycott organized among municipal bond market participants and (ii) John V. Miller ("Miller"), Nuveen's head of municipal finance, for tortious interference with Preston Hollow's prospective business relations. There is no dispute that FMS possesses documents highly relevant to Preston Hollow's claims in the SDNY Case.

Consequently, on November 12, 2021, Preston Hollow served FMS with a subpoena (the

---

[1] References to the "SDNY Case" refer to the litigation pending before Judge Castel and Magistrate Judge Cott in the United States District Court for the Southern District of New York, and styled as *Preston Hollow Capital LLC v. Nuveen Asset Management LLC, et al.,* Case No. 20-cv-05597-PKC (S.D.N.Y.). Because FMS is located in Boca Raton, Florida, Plaintiff is required to seek FMS' compliance with the Subpoena in this Court.

"Subpoena") to obtain such evidence.  Separate productions from another non-party and Nuveen include multiple documents revealing that Tripp Davenport, an employee at FMS, was discussing Preston Hollow, its deals, and its business practices with Nuveen and other municipal bond market participants—all of which goes directly to Preston Hollow's claims in the SDNY Case.  Based on information and belief, Mr. Davenport was an author and recipient of communications with municipal bond market participants that spread misinformation about Preston Hollow and the services it offered to potential borrowers.  The statements had the effect of furthering interference with Preston Hollow's ability to participate in municipal bond transactions and were a source of information for the Defendants.  While FMS previously produced some communications from Mr. Davenport in other actions, FMS has not undertaken a comprehensive search of Mr. Davenport's documents for these communications, and recent productions from other non-parties and Nuveen indicate that Mr. Davenport participated in additional communications outside of FMS' prior search efforts.  As a result, it is likely that FMS uniquely has additional documents and communications relevant to the SDNY Case.  Nevertheless, FMS has failed to produce even a single document to Preston Hollow in response to the Subpoena.

In an effort to avoid bringing this dispute to the Court, Preston Hollow conferred with FMS on the Subpoena three times since its issuance and prior to filing this Motion.  During that time, the parties exchanged countless search term proposals and counterproposals, but were unable to reach an agreement on FMS' obligations to collect documents in response to a search term protocol or to generate a list of all 100% placements FMS has participated in from January 1, 2017 through the present.  On March 23, 2022, following three meet and confers, FMS provided a final search term counterproposal that, as set forth below, severely constricted the searches FMS would run and, based on the review of documents produced by other non-parties and Nuveen, would omit

responsive documents from FMS' search efforts.    As FMS' search counterproposals inappropriately reduce its discovery obligations and since further negotiations about an appropriate search protocol would be futile, Preston Hollow files this motion to compel and respectfully requests that the Court enter an order compelling FMS to produce documents responsive to the Subpoena no later than 10 days from the date the Court enters such an order.

## BACKGROUND

### I.        The SDNY Case and Related Delaware Litigation

Preston Hollow and Nuveen are competing investors in the high yield municipal bond market.  **Exhibit 1** (SDNY Case, Second Amended Complaint, ECF No. 69, (referred to herein as "Second Am. Compl.") ¶¶ 2-3).   Preston Hollow's primary business is the origination and structuring of municipal finance transactions in which Preston Hollow purchases 100% of the securities through negotiated agreements with the issuers, borrowers, underwriters, and (where applicable) financial advisors ("100% placements").  These transactions provide issuers with the benefit of Preston Hollow's sector expertise, including flexible and customized solutions that meet an issuer's specific needs.  Nuveen also has engaged in 100% placements from time to time.  In December 2018, Miller and his subordinates made a series of calls to leading broker-dealers in which they requested that broker-dealers boycott Preston Hollow.  Miller and his subordinates threatened that Nuveen would stop doing business with the broker-dealers if the broker-dealers continued to do business with Preston Hollow.  Second Am. Compl.  ¶¶ 5, 71, 76, 92-152.

Shortly after learning of Nuveen's misconduct, Preston Hollow brought an action in the Delaware Court of Chancery, *Preston Hollow Capital LLC v. Nuveen LLC*, C.A. No. 2019-0169-SG (the "Chancery Action"), seeking only injunctive relief.  Following a two-day trial that included audio recordings of Miller and his colleagues calling market participants about Preston

Hollow, the Chancery Court found that Nuveen "sought an industry-wide agreement not to conduct business with Preston Hollow" and organized "an aggressive and widely dispersed campaign to use almost any pressure necessary to cut off a competitor from its chief source of business." *Preston Hollow Capital LLC v. Nuveen LLC*, 2020 Del. Ch. LEXIS 140, at \*28-45 (Del. Ch. Apr. 9, 2020) (attached as **Exhibit 2**); *see also Preston Hollow Capital LLC v. Nuveen LLC*, 2020 Del. Super. LEXIS 2992, at \*7, \*11, \*21, \*32 (Super. Ct. Dec. 15, 2020) (attached as **Exhibit 3**).

The Chancery Court declined to rule on Preston Hollow's claim under New York's Donnelly Act, however, pursuant to Delaware's policy against innovating in sister-states' laws and its determination that New York law was unresolved as to whether the Donnelly Act authorized injunctive relief in favor of a private plaintiff. The Chancery Court also declined to enter an injunction prohibiting Nuveen from repeating its threats on the finding that Nuveen had not done so subsequent to the filing of Preston Hollow's complaint. Because the Chancery Court found that it lacked jurisdiction to entertain a related defamation claim arising out of the same conduct, it transferred that claim to the Superior Court of Delaware. The defamation litigation is proceeding in the Delaware Superior Court, *Preston Hollow Capital LLC v. Nuveen LLC*, No. N19C-10-107-MMJ [CCLD] (the "Superior Court Action", together with the Chancery Action, the "Delaware Actions"). Based on the Chancery Court's failure to adjudicate the antitrust claim under the Donnelly Act, Preston Hollow subsequently filed the SDNY Case.

The record in the Delaware Actions and the SDNY Case makes it clear that Mr. Davenport discussed Preston Hollow and its deals in the municipal bond market. To develop that record, Preston Hollow subpoenaed FMS and other non-parties, and received document productions from Nuveen. Discovery in the Chancery Action was limited in both time and in substance due to the expedited nature of that proceeding. Fact discovery in that action occurred over approximately

three months, alongside motion practice and expert discovery.  As a result, Preston Hollow served

FMS with another subpoena in the Superior Court Action for information related to its defamation

claim against Nuveen.  However, FMS refused to cooperate in response to that subpoena, and only

produced documents following an order on Preston Hollow's motion to enforce.  Following FMS'

production in the Superior Court Action, Nuveen made a document production in that case and

another non-party made a document production in the SDNY Case that provided additional context

for Mr. Davenport's discussions about Preston Hollow, including that Mr. Davenport engaged in

these communications from 2017 through 2021.  These communications contained incorrect and

misleading information that had the effect of deterring market participants from engaging in 100%

placements with Preston Hollow.  As a result, and as noted above, Preston Hollow served the

Subpoena on FMS.  A copy of the Subpoena is attached as **Exhibit 4**.

## II.        The Subpoena and the Relevant Players

The Subpoena specifically seeks, among other items:

- (1) All Documents and Communications between (i) [FMS] and Nuveen or (ii) [FMS] and Miller Relating to Preston Hollow . . . ;
- (3) All Documents and Communications between (i) [FMS] and Nuveen or (ii) [FMS] and Miller regarding 100% Placements contemplated or completed by any Market Participant and Preston Hollow;
- (9) All Documents and Communications between [FMS] and any Market Participant Relating to (i) Preston Hollow, (ii) 100% Placements, (iii) Nuveen or Miller, or (iv) Communications with Nuveen and/or Miller about Preston Hollow or 100% Placements…;[2]
- (26) All Documents sufficient to identify the 100% Placements [FMS] participated in.

*See* **Exhibit 4**.  FMS has proffered blanket and boilerplate objections to nearly all Subpoena requests (*see* Exhibit 6), similar to the objections to Subpoena request number 9:

> FMS objects to this Request as overly broad in time and scope. Preston Hollow alleges in its Delaware action that the relevant time period for this action "largely centers on the time period between December 2018 and February 2019[,]" yet in this action Preston Hollow requests information from "January 1, 2017 to the

---

[2] Subpoena requests 29-30 and 33-36 seek similar documents and communications between specified market participants.

present." Nuveen did not engage in actionable conduct against Preston Hollow after February 2019. Moreover, in Delaware Case No. 19C-10-107 MMJ (CCLD), the court limited the time period during which Preston Hollow can seek information from non-parties Preston Hollow subpoenaed. In Florida Case No. 502021CA004357 the court also limited the time period during which Preston Hollow can seek information from FMS. This Request is also objectionable because the definition of "Nuveen" is overly broad. FMS does not and cannot know all of the predecessors, successors in interest, affiliates, subsidiaries, divisions, present or former directors, officers, agents, employees, attorneys, or persons acting on behalf of Nuveen since January 1, 2017. Preston Hollow's global definitions of the terms "Document" and "Communication" are also vague and ambiguous, for example the phrase "any other form of preserving thought or expression" included in such definitions. This Request is also improperly unlimited in scope with respect to custodians. This Request is also overbroad because it demands documents generally and is not limited to documents designated with sufficient particularity to suggest their existence or materiality. FMS also objects to this Request as unduly burdensome; specifically, that part of this Request requiring that FMS identify all of its "municipal bond offerings where a single purchaser buys the entirety of the bond in a public or private issuance" since January 1, 2017 in order to be able to response to this Request. FMS also objects to this Request as calling for the production of confidential business information of FMS and its customers concerning any "municipal bond offerings where a single purchaser buys the entirety of the bond in a public or private issuance" since January 1, 2017. This Request is also objectionable because the definition of "Market Participant" is overly broad, vague, and ambiguous. FMS does not and cannot know all conduct constituting "participation in the municipal bond industry." And the phrase "municipal bond industry trade group" is vague and ambiguous. FMS also objects to this Request because FMS has repeatedly confirmed in writing in Preston Hollow's Delaware action that FMS has never made or kept recordings of telephone calls. FMS further objects to this Request as duplicative and unduly burdensome because FMS has already searched for and reviewed documents using search terms ordered by the court in Florida Case No. 502021CA004357 in an effort to locate documents responsive to this Request.[3]

The record indicates that Mr. Davenport had discussions with market participants, including Nuveen, about Preston Hollow over at least a four-year period beginning in 2017, and Mr. Davenport's communications on these topics are directly relevant to Preston Hollow's claims that Miller tortiously interfered with Preston Hollow's business relations and that Nuveen organized a group boycott of Preston Hollow in the municipal bond industry. To reduce the burden

---

[3] FMS claims that it "is not in possession, custody, or control of documents responsive to Request No. 35." Exhibit 6 at 20.

of collecting these documents on FMS, Preston Hollow crafted search terms focusing on communications with a select few market participants, as well as terms related to specific municipal bond transactions.  **Exhibit 5.**  At the same time, Preston Hollow also offered to work with FMS on generating a list of the 100% placement transactions FMS participated in from January 1, 2017 through the present.

### III.   Preston Hollow Made Multiple Good-Faith Efforts to Seek FMS' Compliance, but FMS Ignored Those Efforts and To Date Has Not Complied with the Subpoena

On November 19, 2021, FMS sent a letter to Preston Hollow indicating that it would not respond to the Subpoena due to its prior productions in the Delaware Actions.  Nevertheless, FMS served responses and objections to the Subpoena on November 26, 2021.  **Exhibit 6.** The parties then had an initial meet and confer on November 29, 2021 and on December 28, 2021, Preston Hollow sent FMS a search term protocol seeking documents from three custodians tied to Preston Hollow's claims in the SDNY Case.   The parties had another meet-and-confer on January 7, 2022 to discuss Preston Hollow's search term protocol, and on January 21, 2022, FMS sent Preston Hollow a search term counterproposal that limited the discovery to two different searches: one custodian and one search string for approximately one year and another three custodians and one search string for the same one-year period.  While these negotiations were ongoing, a separate non-party in the SDNY Case produced a number of documents demonstrating that Mr. Davenport was communicating with other market participants about Preston Hollow's business activities from 2017 through 2021. Informed by this development, as well as other discovery from the Delaware Actions, Preston Hollow sent a revised search protocol to FMS on February 4, 2022 which focused only on Mr. Davenport's documents, significantly reduced the number of search terms, and offered to work with FMS to generate a list of 100% placements FMS participated in. On February 15,

2022, FMS responded with another very narrow search counterproposal.

Preston Hollow and FMS met and conferred on February 22, 2022, where FMS demanded that Preston Hollow turn over documents in the non-party production that informed the February 4, 2022 revised search protocol. As that production is governed by a confidentiality order in the SDNY Case, Preston Hollow stated that it could not just provide those documents to FMS, but informed FMS that if it ran the February 4, 2022 revised search protocol, it would be able to see the underlying documents for itself. FMS agreed to re-consider Preston Hollow's February 4, 2022 revised search protocol, but on March 8, 2022 FMS provided yet another limited counterproposal that disregarded the February 22, 2022 discussions. On March 11, 2022, in an effort to compromise, Preston Hollow revised its search term proposal (Exhibit 5) but on March 15, 2022, FMS again responded with a search protocol that did not account for FMS-related discovery received from Nuveen and other non-parties. Preston Hollow sent an email on March 21, 2022 to correct mischaracterizations in FMS' March 15, 2022 correspondence to reach a compromise without judicial intervention. On March 23, 2022, FMS responded with yet another limited counterproposal that failed to account for the parties' recent discussions. **Exhibit 7.**

FMS has not produced a single document in the SDNY Case nor has it committed to do so after rigorous negotiations. As a result of the parties' impasse, Preston Hollow now moves this Court to compel FMS' production of documents.

## LEGAL STANDARD

A "Rule 45 subpoena is a discovery vehicle to be used against non-parties to, among other things, obtain documents relevant to a pending lawsuit" (*Sakhil Ctr. at Doral Condo. Ass'n v. Hanover Ins. Co*., 2019 U.S. Dist. LEXIS 227022, at *2 (S.D. Fla. Mar. 21, 2019)) and Rule 45 "governs the issuance and enforcement of subpoenas." *Anthony v. FDE Mktg. Grp. LLC*, 2021

U.S. Dist. LEXIS 240593, at *1 (S.D. Fla. Dec. 16, 2021). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." FED. R. CIV. P. 26(b)(1). "Relevance in the context of discovery has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (internal quotation marks omitted). "A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A). Rule 45 further provides that "[a] subpoena may specify the form or forms in which electronically stored information is to be produced." FED. R. CIV. P. 45(a)(1)(C).

## ARGUMENT

Respectfully, FMS must be ordered to comply with the Subpoena. FMS' refusal to do so to date lacks a good faith basis in fact and law.

### I. FMS' Documents Are Relevant

As demonstrated above, the Subpoena seeks targeted categories of documents directly relevant to Preston Hollow's claims in the SDNY Case, the full scope of which from 2017 through 2021 are uniquely within FMS' possession. While some communications from Mr. Davenport have already been produced, including from FMS in prior actions, the fact that other non-parties and Nuveen have subsequently produced additional relevant documents involving Mr. Davenport outside of FMS' prior search efforts demonstrates that further searches by FMS are necessary.[4]

---

[4] These documents were produced pursuant to confidentiality orders in the Superior Court Action and SDNY Case and are subject to the provisions in those orders. If the Court believes a review of these documents would be beneficial in connection with this motion, Preston Hollow can make them available to the Court for an *in camera* review.

And FMS' own search proposals here, while deficient for the reasons set forth below, include Mr. Davenport as a custodian, acknowledging his relevance to Preston Hollow's claims. Preston Hollow has created a search protocol that accounts for the information from Mr. Davenport uncovered after FMS' previous productions in the Delaware Actions and that, as a result, have not already been searched for by FMS.

## II. The Subpoena is Narrowly Tailored to Capture Relevant Discovery

The document requests in the Subpoena, as narrowed by Preston Hollow's March 11, 2022 search protocol, are tailored to capture documents relevant to FMS' connection with Preston Hollow's claims.  As mentioned above, Mr. Davenport participated in communications produced by another non-party that indicate he had conversations with other market participants that may have furthered the interference with Preston Hollow's ability to participate in the municipal bond industry.  And, discovery in the Delaware Actions, including late-produced discovery by Nuveen after FMS completed its productions in those actions, confirms that Mr. Davenport was discussing Preston Hollow and its deals for years with Nuveen.

In contrast, FMS' search counterproposals would omit much of this responsive discovery, as those proposals (i) cut off FMS' searches as of February 23, 2019 despite evidence of Mr. Davenport's communications after that date, and (ii) fail to include key search terms, including but not limited to the word "Nuveen" or terms related to specific municipal bond transactions or 100% placements, both of which would capture clearly relevant information.  Finally, as Preston Hollow's litigation against Nuveen relates to 100% placements, other non-parties in the Superior Court Action were ordered to produce a list of the 100% placements they participated in from January 1, 2017 through the present.  **Exhibit 8** at 55:10-13 (Excerpted Hr'g Tr.).  FMS, which has not previously produced a list of its own 100% placements, should produce that same list here.

The information Preston Hollow seeks is reasonably calculated to lead to the discovery of admissible evidence and is relevant to assess the impact of Miller's tortious interference with Preston Hollow's business and participation in a group boycott organized by Nuveen.  Preston Hollow is entitled to non-privileged information that relates to its claims in the SDNY Case.

**III.    FMS Should be Compelled to Comply with the Subpoena**

To date, FMS has not produced a single document in response to the Subpoena.  Informed by the fact that Preston Hollow needed judicial intervention to compel FMS' compliance with a subpoena in the Superior Court Action, as well as the incremental proposals FMS offered during negotiations here, it is clear that FMS does not intend to satisfy its obligations in response to this Subpoena without Court intervention.  Preston Hollow has tried to ease FMS' burden in complying with the Subpoena by tailoring its request to searches of a single custodian and minimal search terms, and it was willing to work with FMS on generating the list of 100% placements FMS participated in from January 1, 2017 through the present. Indeed, Preston Hollow "reasonably believed that the Parties could work out [FMS'] objections without Court intervention", *ADP, LLC v. Ultimate Software Grp., Inc.*, 2017 WL 7794274, at *1 (S.D. Fla. July 26, 2017), and through meet and confers and extensive correspondence Preston Hollow endeavored to do just that, which was good cause to delay filing this motion.  S.D. Fla. L.R. 26.1(g)(1).  Nevertheless, FMS has not committed to produce any documents, nor has FMS proposed a reasonable solution to comply with the Subpoena.  FMS' counterproposals are far too limited and would not capture clearly responsive discovery.  Given FMS' positions, Preston Hollow believes that judicial intervention is necessary in order to enforce FMS' obligations in response to the Subpoena.

<u>**CONCLUSION**</u>

For the foregoing reasons, Preston Hollow respectfully requests that the Court grant its

Motion and enter an order compelling FMS to produce the subpoenaed documents no later than 10 days after such order and for all such other and further relief to which Preston Hollow is entitled.

<u>**CERTIFICATE OF COUNSEL**</u>

Pursuant to Local Rule 7.1(a)(3)(A), we hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues, including by three telephonic meet and confers on November 29, 2021, January 7, 2022, and February 22, 2022.  Counsel for FMS has refused to search for or produce the requested discovery.

Dated:  April 21, 2022                              Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Counsel for Preston Hollow Capital LLC*
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL  33401
Telephone:  (561) 835-8500
Facsimile:  (561) 650-8530

By*:*      */s/ Matthew R. Chait*
          **Matthew R. Chait**
          Florida Bar No. 17657
          Email:  mchait@shutts.com
          **Michael A. Munoz**
          Florida Bar No. 1003076
          Email: mmunoz@shutts.com